## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KRISTOPHER ALLEN SHIEL,**

           **Plaintiff,**               **Civil Action No. 17-cv-12267**

           **v.**                      **District Judge Terrence G. Berg**

**COMMISSIONER OF**             **Magistrate Judge Mona K. Majzoub**
**SOCIAL SECURITY,**

           **Defendant.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Kristopher Allen Shiel seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 14). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

## II.    PROCEDURAL HISTORY

On June 2, 2014, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he has been disabled since March 1, 2011. (TR 20.)  The Social Security Administration initially denied Plaintiff's claims on October 1, 2014.  (*Id*.)  On March 14, 2016, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Andrew Sloss.  (TR 38-64.)  On May 26, 2016, the ALJ issued an unfavorable decision on Plaintiff's claims.  (TR 20-32.)  Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on May 22, 2017.  (TR 1-3.)  On July 12, 2017, Plaintiff commenced this action for judicial review. (Docket no. 1.)  The parties filed cross motions for summary judgment, which are currently before the Court.  (Docket no. 12; docket no. 14.)

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues.  (Docket no. 12, pp. 7-8.)  In addition, the ALJ summarized Plaintiff's testimony and medical record (TR 22-29), and Defendant relied on the ALJ's summary (docket no. 14, p. 7).  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, and that Plaintiff did not engage in substantial gainful

activity since March 1, 2011, the alleged onset date. (TR 22.) The ALJ found that Plaintiff had the following severe impairments: attention deficit-hyperactivity disorder; bipolar disorder. (*Id*.) In addition, the ALJ observed that Plaintiff had a history of non-severe degenerative disc disease. (TR 23.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 23-24.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, but was "limited to simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public, coworkers and supervisors." (TR 24.) On the basis of that determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that Plaintiff could perform the requirements of occupations that exist in significant numbers in the national economy, including kitchen helper, hand packager, and cleaner. (TR 31.) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time between the alleged onset date and the date of the decision. (*Id*.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

     (3)     the impairment met or was medically equal to a "listed impairment;" or

     (4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'"  *Id.* (citations omitted).

     **C.**     **Analysis**

     Plaintiff contends that the ALJ erred in five respects.  First, Plaintiff asserts that the ALJ improperly determined that Plaintiff had no severe physical impairments.  Second, Plaintiff alleges that the ALJ failed to consider all of Plaintiff's impairments, both severe and non-severe.  Third, Plaintiff argues that the ALJ failed to properly evaluate the opinions of his treating physicians.  Fourth, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence.  Fifth, Plaintiff submits that the ALJ posed an improper hypothetical to the VE.  The undersigned will address these issues separately below, with the exception of the second and fourth arguments, which raise substantially the same question and will be discussed together under the "RFC" heading.

### 1. *Severe Physical Impairment(s)*

First, Plaintiff contends that the ALJ erred by declining to find that Plaintiff suffers from additional severe impairments, including degenerative disc disease and chronic pain. (Docket no. 12, pp. 8-13.) However, after an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5). Accordingly, once a claimant "clears" step two of the analysis, the fact that some of the claimant's impairments are not deemed to be severe at step two is "legally irrelevant." *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). The substance of Plaintiff's argument—that the ALJ failed to account for Plaintiff's physical impairments—is discussed below.

### 2. *RFC*

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. In particular, Plaintiff argues that the ALJ (1) failed to adopt limitations based on his physical impairments and (2) adopted insufficient limitations based on his mental impairments. (Docket no. 12, pp. 13-16, 19-20.)

#### a. Physical Limitations

Plaintiff alleges that the ALJ failed to recognize "exertional impairments that effected [*sic*] [Plaintiff's] ability to stand, walk and sit for prolonged periods of time" as well as his ability to lift, push, pull, carry, use foot pedals, climb, balance, squat, kneel and crawl. (Docket no. 12, p. 12.) In support, Plaintiff refers to the treatment records of Dr. Brittani Thomas and Dr. Nasser Sabbagh, which record that Plaintiff complained of lower extremity weakness, chronic

pain, and fatigue (TR 224-29, 251) and that Plaintiff exhibited abnormal reflexes in his lower extremities (TR 231).  Plaintiff also refers to an MRI performed on November 21, 2013, which revealed "broad based left lateral disc protrusion, which abutted the left L2 nerve root, with mild hypertrophic changes at the facets at L2-L3 and L4-L5, and a minimal central disc protrusion at L5-S1."  (TR 363-64.)

The ALJ acknowledged these records, but also noted that Plaintiff had a normal EMG of his lower extremities (TR 384) and that during an examination by Dr. Sabbagh on January 22, 2015, Plaintiff "was not in any acute distress, had a normal gait and full strength in all four extremities" (TR 386).  Accordingly, the ALJ adopted no physical limitations in the RFC.  (TR 24.)

Plaintiff alleges that the ALJ failed to evaluate the opinions of Dr. Thomas and Dr. Sabbagh.  (Docket no. 12, p. 11.)  However, while Dr. Thomas and Dr. Sabbagh recorded Plaintiff's symptoms and suggested possible pathologies, neither doctor offered any opinion regarding the functional limitations arising from those symptoms.  Because Dr. Thomas and Dr. Sabbagh offered no opinions regarding Plaintiff's functional limitations, the ALJ did not err by declining to adopt functional limitations based on their treatment records.

### b. Mental Limitations

Plaintiff contends that the RFC should have limited him to "work that did not require any fast paced production or quotas, that allowed for frequent position changes and the ability to move and walk around, involved only minimal, rather than occasional, contact with the general public, supervisors and co-workers, and allowed for time off task."  (Docket no. 12, p. 20.)  In support, Plaintiff refers to the report of state-agency consultant Dr. Blaine Pinaire, who determined that Plaintiff had moderate impairments in the following areas:

- Understanding and remembering detailed instructions;

- Carrying out detailed instructions;

- Maintaining attention and concentration for extended periods;

- Completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- Interacting appropriately with the general public;

- Accepting instructions and responding appropriately to criticism from supervisors;

- Getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- Responding appropriately to changes in work setting.

(TR 82-83.)

Plaintiff contends that these "moderate" limitations, either individually or in the aggregate, require functional limitations more expansive than those adopted by the ALJ (which as addressed above, limit Plaintiff to "simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public, coworkers and supervisors"). (Docket no. 12, pp. 14-15.) Defendant contends that the RFC adequately accounts for Dr. Pinaire's findings. (Docket no. 14, p. 22.)

Courts in this Circuit have addressed the issue of formulating a concrete RFC from opinions regarding "mild" or "moderate" limitations. In this regard, Plaintiff relies on *Ealy v Commissioner*, 594 F.3d 504 (6th Cir. 2010), in support of the assertion that "[l]imiting the Plaintiff 'to simple, routine tasks, in work that has only occasional changes in the work setting,' does not account for moderate limitations in concentration, persistence or pace, since such jobs may still involve quotas, staying on task and working at a consistent pace." (Docket no. 12, p. 16.) However, *Ealy* is distinguishable because that case involved a medical opinion that the

claimant was limited to "simple repetitive tasks [for] '[two-hour] segments over an eight-hour day where speed was not critical.'"  *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x. 426, 436-37 (6th Cir. 2014) (citing *Ealy*, 594 F.3d at 516).  As Defendant observes, "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence, and pace." (Docket no. 14, p. 22. (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016)).)  Accordingly, the RFC adequately incorporates Dr. Pinaire's opinions regarding Plaintiff's moderate limitations.

The ALJ also relied on the report of consulting examiner Dr. Matthew P. Dickson, who opined that Plaintiff had moderate impairments in his ability to "understand, attend to, remember, and carry[] out instructions," to "respond appropriately to co-workers and supervision" and to "adapt to change and stress in the workplace."  (TR 280.)  Dr. Dickson also indicated that Plaintiff "would benefit from active job responsibilities where he can move about and expend energy."  (*Id.*)

Plaintiff contends that the RFC fails to account for Dr. Dickson's recommendation regarding "active" job responsibilities.  (Docket no. 12, p. 14.)  However, as set forth above, Plaintiff seeks limitations regarding his ability to "stand, walk and sit for prolonged periods of time."  (*Id.* at 12.)  Although the ALJ gave great weight to Dr. Dickson's opinion, he was not required to "incorporate the entirety of [his] opinion."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).  Because no other doctor proposed a similar limitation, and given Plaintiff's testimony regarding chronic pain and fatigue, the ALJ reasonably declined to limit Plaintiff to jobs with "active" responsibilities.

Accordingly, substantial evidence in the record supports the ALJ's determination that Plaintiff is capable of performing a full range of work at all exertional levels, but is "limited to simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public, coworkers and supervisors." (TR 24.)

### 3. Evaluation of Opinion Evidence

Next, Plaintiff contends that the ALJ erred by assigning only little weight to the opinions of Dr. Kelly Gardiner, Dr. Todd Rosen and Dr. A. Williams. (Docket no. 12, pp. 16-17.) However, these doctors offer little in the way of opinion evidence except for Global Assessment of Functioning ("GAF") scores (Dr. Gardiner: 60; Dr. Rosen: 80; Dr. Williams; 50). (TR 256, 268, 274.)

A GAF score is a "subjective rating of an individual's overall psychological functioning," which may assist an ALJ in assessing a claimant's mental RFC. *Kennedy v. Astrue*, 247 Fed. App'x. 761, 766 (6th Cir. 2007). GAF scores are "not raw medical data," *id.*, and "the Commissioner has declined to endorse the [GAF] score for use in" Social Security benefits programs. *Lee v. Comm'r of Soc. Sec.*, 529 Fed. App'x. 706, 716 (6th Cir. 2013) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x. 411 (6th Cir. 2006)).

The ALJ gave little weight to the opinions of Dr. Williams and Dr. Gardiner because "no rational [*sic*] . . . was provided" in support of their GAF assessments. (TR 26-27.) Plaintiff disputes this conclusion, contending that the ALJ "ignores the 4 pages of intake information that precede Dr. Williams' opinion" and fails to account for "Dr. Gardiner's 4 page report discuss[ing] the Plaintiff's poor sleep, need to nap during the day, mood swings, anger issues, snapping at people, excessive, tangential and over-inclusive talking, inability to calm down and

relax, crying spells, decreased interest in activities, racing thoughts, chronic body pain, irritable and inattentive behavior and mood, agitated affect, pressured, rapid and loud speech, grandiose thoughts, fair concentration, impaired to fair judgment and fair insight."  (Docket no. 12, pp. 16-17.)

Although Plaintiff is correct that Dr. Williams and Dr. Gardiner recorded Plaintiff's medical history and assessed his mental status, neither doctor provided a rationale in support of the GAF score they assigned.  Dr. Williams observed that Plaintiff was "cooperative," had a "euthymic" mood, "appropriate" affect, "normal" attention, and was "good w/ the kids," but also noted that Plaintiff had "poor" judgment and impulse control.  (TR 258-59.)  Given this complex assessment, the ALJ reasonably questioned the basis for (as well as the limiting effects of) a GAF score of 50.  For comparison, Dr. Gardiner recorded that Plaintiff's behavior was "irritable" and "inattentive," that his mood was "irritable," that his thought content was "grandiose at times," and that his judgment was "fair," and ultimately assigned a GAF score of 60.  Again, the report recites symptoms and assigns a GAF score (which is, notably, ten points higher than Dr. Williams' assessment) without analyzing the basis of the score or its functional implications.

The ALJ gave little weight to Dr. Rosen's opinion that Plaintiff had a GAF score of 80 (indicating no psychiatric limitations) because that score was inconsistent with other evidence in the record.  (TR 27.)  Plaintiff contends that Dr. Rosen actually assigned a (poorly handwritten) GAF score of 50.  (Docket no. 12, p. 17.)  Even assuming that is the case, however, Dr. Rosen's GAF assessment is subject to the same criticism as Dr. Williams' and Dr. Gardiner's—it fails to analyze the basis of Plaintiff's GAF score and/or express an opinion regarding Plaintiff's functional limitations.

Next, Plaintiff contends that the ALJ "did not fully discuss and evaluate the Hope Network records found at Exhibit B-15F" including the treatment notes of RN Jackie Duncan. (*Id.* at 18-19.)  In particular, Plaintiff emphasizes that he "had a depression score in February of 2016 totaling 15, which indicated moderate to severe depression," that "[a]nxiety testing at that same time, produced an anxiety score of 17, indicating severe anxiety and a need for active treatment with pharmacotherapy, and/or psychotherapy," and that Nurse Duncan "noted that the Claimant may suffer from a neurological sensory processing disorder verses a psychological autistic spectrum disorder." (*Id.*)  However, Plaintiff fails to demonstrate that these records support the imposition of additional functional limitations.  Accordingly, the ALJ did not err by declining to address them.

In addition, Plaintiff contends that the ALJ fails to evaluate the opinions of Dr. Sabbagh and Dr. Thomas.  (Docket no. 12, p. 17.)  As discussed above, those doctors did not offer any opinion regarding the functional limitations of Plaintiff's symptoms.  Accordingly, any failure by the ALJ to specifically weigh or evaluate the "opinions" regarding Plaintiff's symptoms and/or the causes thereof was harmless.  *See* 20 CFR § 404.1527 ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

### 4. *Hypothetical to VE*

Plaintiff contends that "[t]he Administrative Law Judge's failure to adequately describe the functional limitations caused by the Plaintiff's impairments, [*sic*] erodes the foundation necessary for relying on the vocational expert's testimony." (Docket no. 12, p. 20.)  However, as addressed above, the ALJ's RFC determination is supported by substantial evidence.

Accordingly, the ALJ did not err by posing a hypothetical to the vocational expert based on the RFC.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 18, 2018                  s/ Mona K. Majzoub

MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  June 18, 2018                    <u>s/ Leanne Hosking</u>
                                        Case Manager